**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT SIEMASKO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 3:26-cv-50431** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMAZON.COM SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | **Jury Trial Demanded** |
| | ) | |

## COMPLAINT

Plaintiff, Robert Siemasko ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Amazon.com Services, LLC ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA") seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's harassment of Plaintiff based upon his disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit further arises under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq*. ("FMLA") seeking redress for Defendant's interference with Plaintiff's FMLA rights and retaliation for Plaintiff utilizing his FMLA rights.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

4. This action is authorized and instituted pursuant to 42 U.S.C. § 12101 et seq.

5. Venue of this action properly lies in the Northern District of Illinois, Western Division, pursuant to 28 U.S.C. § 1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

6. All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*., and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. have occurred or been complied with.

7. A charge of employment discrimination on basis of disability and retaliatory discharge was filed by the Plaintiff with the Equal Employment Opportunity Commission ("EEOC") (Attached hereto as Exhibit "A").

8. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

9. Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

10. Plaintiff, Robert Siemasko, is a natural person, over 18-years-of-age, who at all times relevant to the allegations in this Complaint resided in DeKalb County, Illinois.

11. Defendant, Amazon.com Services, LLC, whose address is 1401 Gurler Rd, DeKalb, IL 60115-8790 is a limited liability company that at all times material to the allegations in this Complaint was doing business in and for DeKalb County, Illinois.

12. Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4) and was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

13. During the applicable limitations period, Defendant has had at least fifteen employees, and has had at least fifty employees in a 75 mile radius, has been an "employer" as defined by ADA, 42 U.S.C. § 12111(5)(A) and the FMLA 29 U.S.C. § 2611(4), and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

**BACKGROUND FACTS**

14. Plaintiff was employed as a Process Assistant by Defendant, beginning in or around 2023 until his termination on or about July 2, 2026.

15. Plaintiff has a mental impairment that substantially limits major life activities.

16. Specifically, Plaintiff suffers from anxiety, ADHD, and depression.

17. As a result of Plaintiff's disability, Plaintiff has serious difficulty managing his mental health.

18. Plaintiff's major life activities including working and caring for himself are impacted by his disabilities.

19. Plaintiff is a "qualified individual" as defined under the ADA.

20. Plaintiff is "disabled" as defined under the ADA.

21. Plaintiff is a member of a protected class because of his disabilities.

22. Despite Plaintiff's disability, Plaintiff was qualified and able to perform the essential functions of his job, with or without reasonable accommodation.

23. In or around September 2025, Plaintiff overheard a discussion about a group chat in which,

based on his understanding, supervisors or individuals above his level were discussing efforts to "run [him] off."

24. Plaintiff also overheard associates discussing rumors about him and stating that they had heard people discussing efforts to get rid of him or, even more appallingly, telling him to commit suicide.

25. Plaintiff never made any suicidal statements and was never suicidal.

26. Toward the end of November 2025, outside of work, Plaintiff was involved in a freak accident during which, in the middle of the night, someone stepped in front of his car and Plaintiff accidentally hit the individual.

27. Plaintiff was cleared of any wrongdoing in connection with the accident.

28. Plaintiff informed Defendant's management of the incident.

29. Around November 2025, a supervisor whose name Plaintiff does not recall approached him and unexpectedly asked whether he was suicidal.

30. At that time, Defendant's management knew that Plaintiff was struggling with his mental health.

31. Following the accident, Plaintiff became aware of additional rumors being spread by management, which was further harassment by Defendant based on Plaintiff's disability.

32. Among other things, management spread false rumors that Plaintiff had AIDS.

33. Plaintiff did not file a formal complaint because he had previously witnessed a friend, Shane (LNU), experience retaliation after raising workplace concerns.

34. Plaintiff was also experiencing retaliation after speaking up on behalf of a coworker who had taken a leave of absence because he did not feel safe working in the warehouse.

35. The rumors, harassment, and treatment Plaintiff experienced were part of the retaliation against him for speaking up about workplace safety concerns, as they were sufficiently severe so as to alter the terms of his employment and constitute adverse employment actions.

36. In or around December 2025, the same supervisor who had asked Plaintiff whether he was suicidal attempted to pressure Plaintiff into taking a leave of absence ("LOA").

37. The supervisor told Plaintiff that they did not want him to "get into a situation [he] would not survive."

38. Plaintiff declined the leave.

39. Although Plaintiff was experiencing fatigue and significant stress, he was not suicidal.

40. Plaintiff's fatigue was a symptom of his depression.

41. Plaintiff's manager was aware that Plaintiff was frequently tired, suffering from a lack of sleep, and experiencing significant fatigue.

42. Plaintiff repeatedly expressed to management that he needed a break because of stress and his mental health.

43. At the time, Plaintiff did not request a formal reasonable accommodation because he was unaware that he could request one; however Defendant had enough information to know the one was needed and should have commenced the interactive process to determine what accommodations would have been reasonable.

44. In or around May 2026, Plaintiff formally disclosed his anxiety and depression to his supervisor, Jacyleen (LNU).

45. Because Plaintiff worked overnight and Human Resources was not present, Plaintiff discussed his medical conditions directly with Jacyleen.

46. Plaintiff explained his medical conditions to Jacyleen and expressed concerns regarding his fatigue, anxiety, stress, and mental health.

47. In conjunction with his disclosure, Plaintiff requested FMLA leave in order for him to care for his mental state.

48. In making this request, Plaintiff was asking for a reasonable accommodation and engaging in protected activity under both the ADA and FMLA.

49. Jacyleen initially discouraged Plaintiff from taking FMLA leave, telling Plaintiff that Defendant needed him at work, clearly interfering with his right to freely take leave.

50. This discouragement prejudiced Plaintiff, as it prevented him from commencing leave as early as he wanted to.

51. Toward the end of their discussions, however, Jacyleen stopped discouraging Plaintiff from taking FMLA leave and did not prevent him from pursuing such leave.

52. On or about June 25, 2026, Jacyleen provided Plaintiff with the proper FMLA paperwork which Plaintiff provided to his doctor and completed.

53. On or about June 28, 2026, Plaintiff returned the paperwork and formally requested FMLA leave from June 28, 2026, through July 1, 2026, due to anxiety, ADHD, and depression—all serious health conditions that require constant treatment from medical professionals.

54. This was Plaintiff’s first request for FMLA leave.

55. Later, Plaintiff requested and was provided paperwork for short-term disability (“STD”) leave.

56. Plaintiff filled out the STD paperwork and returned it.

57. Plaintiff’s leave was scheduled to run from July 5, 2026, through July 26, 2026.

58. July 2 through July 4, 2026, were Plaintiff's regularly scheduled days off.

59. On July 1, 2026, Plaintiff received an email confirming that Defendant had received his STD leave request.

60. The leave information identified Plaintiff's requested leave period as June 28, 2026, through July 26, 2026.

61. Defendant was therefore aware that Plaintiff was seeking medical leave and that his FMLA request remained pending.

62. On or about July 2, 2026, while Plaintiff's FMLA request was still pending, Plaintiff received a termination letter from Defendant stating that his employment had been terminated effective July 1, 2026.

63. Defendant characterized Plaintiff's separation as a voluntary termination.

64. Plaintiff did not voluntarily end his employment.

65. Defendant's decision to terminate Plaintiff was improper because Defendant knew about Plaintiff's medical conditions, knew that he was actively seeking FMLA leave, and knew that he was participating in the FMLA process.

66. Plaintiff later requested an extension of his leave from July 27, 2026, through August 27, 2026.

67. At that time, the supporting medical documentation for the extension was still pending and was not due until August 18, 2026.

68. On August 19, 2026, at approximately 9:00 a.m., Plaintiff spoke with another Amazon representative who initially told Plaintiff that he would be able to be reinstated because his leave had been approved and that he would receive back pay.

69. Plaintiff subsequently spoke with another Human Resources representative who provided different information and informed Plaintiff that nothing could be done regarding reinstatement or payment of back pay.

70. Ultimately, Plaintiff was never reinstated and his termination stood.

71. Plaintiff was never provided a reason for his termination.

72. Plaintiff was terminated due to his disability, in retaliation for requesting a reasonable accommodation, and in retaliation for pursuing his rights under the FMLA.

73. Despite knowing of Plaintiff's need for a reasonable accommodation, Defendant failed to engaging in an interactive process to determine appropriate accommodations.

74. Ultimately, on or about July 1, 2026, Plaintiff was terminated.

75. Plaintiff can show that he engaged in statutorily protected activity—a necessary component of his retaliation claim—because Plaintiff requested reasonable accommodations for his disability, requested FMLA documents, and reported disability-based harassment and discrimination to his employer.

## COUNT I

### Violations of the Americans with Disabilities Act
### (Disability-Based Discrimination)

76. Plaintiff repeats and re-alleges paragraphs 1–75 as if fully stated herein.

77. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

78. Plaintiff met or exceeded performance expectations.

79. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's

protected class.

80. Plaintiff was terminated by Defendant on the basis of Plaintiff's disability.

81. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA, 42 U.S.C. § 12101, et seq.

82. Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12101, et seq., due to Plaintiff's disability.

83. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

84. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
**Violation of Americans with Disabilities Act**
**(Disability-Based Harassment)**

85. Plaintiff repeats and re-alleges paragraphs 1–75 as if fully stated herein.

86. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

87. Defendant knew or should have known of the harassment.

88. The disability-based harassment was severe or pervasive.

89. The disability-based harassment was offensive subjectively and objectively.

90. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., due to Plaintiff's disability.

91. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

92. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT III**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

93. Plaintiff repeats and re-alleges paragraphs 1–75 as if fully stated herein.

94. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

95. Plaintiff is a qualified individual with a disability.

96. Defendant was aware of the disability and the need for accommodations.

97. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

98. Plaintiff's reasonable accommodations that were requested were not an undue burden on the Defendant.

99. Defendant did not accommodate Plaintiff's disability.

100. Plaintiff is a member of a protected class under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., due to Plaintiff's disability.

101. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

102. As a direct and proximate result of the failure to accommodate described above, Plaintiff

has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT IV**
**Violation of Americans with Disabilities Act**
**(Retaliation)**

103. Plaintiff repeats and re-alleges paragraphs 1–75 as if fully stated herein.

104. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, et seq.

105. During Plaintiff's employment with Defendant, Plaintiff requested reasonable accommodations for his disability.

106. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

107. Defendant then terminated Plaintiff.

108. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting reasonable accommodations for his disability thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

109. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity, specifically, termination.

110. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

111. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT V
### Violation of the Family Medical Leave Act
### (FMLA Interference)

112. Plaintiff repeats and re-alleges paragraphs 1–75 as if fully stated herein.

113. In or around June 2026, Plaintiff was eligible for FMLA leave by virtue of having worked for Defendant for at least one year and having worked the requisite 1,250 hours in the previous calendar year.

114. At all times material, Plaintiff gave proper notice to his employer by informing them of his reason for needing medical leave.

115. Defendant controlled Plaintiff's work schedule and conditions of employment.

116. Plaintiff provided enough information for his employer to know that his potential leave may be covered by the FMLA.

117. Despite Plaintiff's FMLA eligibility and application, Defendant terminated Plaintiff's employment before it could be utilized.

118. When Defendant terminated Plaintiff's employment, Defendant interfered with Plaintiff's rights under the FMLA, 29 U.S.C. § 2601 et seq.

119. Further, when Defendant discouraged Plaintiff from applying for FMLA leave, Defendant prejudiced Plaintiff and interfered with his Rights

120. Despite Plaintiff's FMLA eligibility, Defendant unlawfully denied Plaintiff's use of his FMLA rights.

121. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

122. As a direct and proximate result of the interference described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has

suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT VI**
**Violation of the Family Medical Leave Act**
**(FMLA Retaliation)**

123. Plaintiff repeats and re-alleges paragraphs 1-75 as if fully stated herein.

124. At all times herein, Plaintiff was eligible for FMLA leave.

125. Defendant terminated Plaintiff after Plaintiff requested FMLA leave.

126. Defendant terminated Plaintiff because requested FMLA leave as described above.

127. Defendant intentionally engaged in unlawful employment practice in violation of the FMLA by retaliating against Plaintiff for requesting leave for medical reasons.

128. Plaintiff's request for medical leave pursuant to the FMLA was a direct and proximate cause of Plaintiff's termination.

129. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay with interest;

b. Payment of interest on all back pay and benefits recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Liquidated damages;

g. Reasonable attorneys' fees and costs;

h. Award pre-judgment interest if applicable; and

i. Award Plaintiff any and all other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated: September 18, 2026.

/s/ ***Nathan C. Volheim***
**NATHAN C. VOLHEIM, ESQ.**
IL Bar No.: 6302103
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 568-3056
Fax (630) 575 - 8188
nvolheim@sulaimanlaw.com
*Attorney for Plaintiff*

/s/ ***Sophia K. Steere***
**SOPHIA K. STEERE, ESQ.**
KY Bar No.: 100481
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307-7634
Fax (630) 575-8188
ssteere@atlaslawcenter.com
*Attorney for Plaintiff*

/s/ ***Jake Fondel***
**JAKE FONDEL, ESQ.**
IL Bar No.: 6354446
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 272-5953
Fax (630) 575 - 8188
jfondel@atlaslawcenter.com

*Attorney for Plaintiff*